UNITED STATES DISTICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN SECTION

| | |
|---|---|
| PARAMOUNT REALTY INVESTMENT LLC, GRIDIRON PARKING, LLC, CREATIVE ENTERTAINMNT CONCEPTS, INC. d/b/a SKYPLEX, 1700 MAIN STREET, INC., STEVEN C. STEIN, <div align=center>Plaintiffs</div> v. <br><br>DOMENIC SARNO, In His Individual and Official Capacity, PETER L. SYGNATOR, In His Individual and Official Capacity, CITY OF SPRINGFIELD, HERIBERTO FLORES, JOHN MOTTO, NEW ENGLAND FARM WORKERS COUNCIL, INC., THE REPUBLICAN COMPANY, PETER A. PICKNELLY, PENN NATIONAL GAMING, INC., PAUL PICKNELLY, FRANCIS CATALDO, JOHN M. SANTANIELLO, ROBERT SLUKA, RICHARD KANE & ASSOCIATES, <div align=center>Defendants</div> | **CIVIL COMPLAINT AND JURY DEMAND** <br><br><br><br> **CIVIL NO: 3:14-cv-30193** |

## NATURE OF THE CLAIMS FOR RELIEF

1. Plaintiffs, Paramount Realty Investment, LLC, Gridiron Parking, LLC, Creative Entertainment Concepts, Inc., 1700 Main Street, Inc. and Steven C. Stein, individually and as successor to each of the corporate entities named herein, bring this action to vindicate their right to regain control and operate their entertainment businesses free from the defendants' fraudulent and extortionate conduct and seek damages for financial harm suffered as a result of the defendants' conspiracy, racketeering activity and violation of plaintiffs' constitutional civil rights.

2.  In 1999, the plaintiff, Paramount Realty Investment, LLC purchased the Paramount Theater building, a four story mixed use development consisting of 48,700 square feet of office space, restaurant and street level retail as well as a historically designated theater constructed in 1929 with a seating capacity of 2,450 located at 1676-1708 Main Street which was restored and renovated to its original character, restored and opened as the "Hippodrome." Plaintiff, Gridiron LLC purchased an adjacent 30,564 square foot parking lot for 110 vehicles located at 33 Gridiron Street.

3.  During the Hippodrome's grand opening in 2000, Peter Picknelly, Sr., now deceased father of defendant Peter A. Picknelly, came to the theater and, during a private discussion with plaintiff, Steven Stein and former business partner Michael J. Barrasso, discussed the future of the theater and the plans that the plaintiffs had for the building. At the time, Peter Picknelly, Sr. expressed his interest to, one day, see a casino located at the site.

4.  The following year, in or about 2001, non-party participant, Anthony Cignoli of A.L. Cignoli Company of Springfield, contacted the plaintiff Steven C. Stein and his former business partner and claimed that casino gaming in Massachusetts could possibly be revived. He then advised them to determine a price at which they would sell the entertainment venue for casino gaming.

5.  With the prospects of casino gaming in Massachusetts appearing far into the future, if at all, plaintiff, Steven C. Stein and former business partner, Michael J. Barrasso, designed their business plan for entertainment to be marketed to younger individuals with "college-oriented nights," "club night," "techno music nights" and concerts and sporting events.

6.  For the next several years, the plaintiff businesses successfully operated at the entertainment venues in the city of Springfield, both at 10-12 Stearns Square (the "Skyplex") and 1700 Main

Street (the "Hippodrome").  During this period of time the plaintiff businesses were never sanctioned by city or state officials for a violation of their liquor license or entertainment license, despite being two of the most popular entertainment venues in Springfield.

7.  Beginning in or around 2009, various city officials, acting individually and/or in concert with one another, began the conspiracy, which is further described herein and the subject of this action, against these entertainment business establishments and their owners, who had conducted successful businesses over several years, ultimately resulting in the "forced sale" of both the historic Paramount Theater building and adjacent 33 Gridiron Street parking lot on March 4, 2011 far below fair market value to defendant,  New England Farm Workers Council, Inc., a sale manipulated by the defendant's President, Heriberto Flores and Chief Financial Officer, John Motto. The culmination of events, leading to and including the "forced sale" on March 4, 2011, serve as the basis for the conspiracy and racketeering scheme alleged herein.

8.  Beginning in or around 2009, several of the defendants subjected these businesses to a relentless barrage of related conduct designed to destroy their public image and inflict maximum economic damage on them. The conduct included almost daily publication of false, misleading, baseless, negative and/or damaging information about them to countless third parties, and reported by defendant, *Springfield Republican*, unlawful interference with their existing and prospective business relations, orchestration of frivolous complaints on their entertainment and liquor licenses and communications with other Springfield business owners, all aimed at eliminating and/or reducing the value of their businesses.

9.  Plaintiffs bring this action for damages and equitable relief pursuant to 18 U.S.C. 1962 (a)-(d), the Racketeer Influenced and Corrupt Organization Act ("RICO"), 42 U.S.C. § 1983

and the Fourth and Fourteenth Amendments to the United States Constitution, as well as other federal and state claims.

## JURISDICTION AND VENUE

10. This civil action is brought pursuant to 18 U.S.C. 1962 (a)-(d), the Racketeer Influenced and Corrupt Organization Act ("RICO"), 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

11. Jurisdiction is proper in accordance with 28 U.S.C. §§ 1331 and 1343 as well as the aforementioned statutory provisions. In addition, the plaintiffs hereby invoke the pendant jurisdiction of this Court to hear and decide state claims arising under M.G.L. c. 12 § 11 (Massachusetts Civil Rights Act), M.G.L. c.93 A (Massachusetts Unfair Deceptive Acts and Practices), civil conspiracy and decisional state law and common law of the Commonwealth, including but not limited to breach of contract, breach of covenant of good faith and fair dealing and intentional tortious conduct.

## PARTIES AND NON-PARTY PARTICIPANTS
## THE PLAINTIFFS

12. Plaintiff, Paramount Realty Investment, LLC is a limited liability corporation organized under the laws of the Commonwealth of Massachusetts on August 17, 1999 with a former business address of 10-12 Stearns Square, Springfield, Hampden County, Massachusetts.

13. Plaintiff, Gridiron Parking, LLC is a limited liability corporation organized under the laws of the Commonwealth of Massachusetts on August 17, 1999 with a former business address of 10-12 Stearns Square, Springfield, Hampden County, Massachusetts.

14. Plaintiff, Creative Entertainment Concepts, Inc., d/b/a Skyplex, is a corporation organized under the laws of the Commonwealth of Massachusetts on April 16, 2003 with a business address of 10-12 Stearns Square, Springfield, Hampden County, Massachusetts.

15. Plaintiff 1700 Main Street, Inc. is a corporation organized under the laws of the Commonwealth of Massachusetts on August 13, 2009 with a former business address of 1694 Main Street, Springfield, Hampden County, Massachusetts.

16. Plaintiff, Steven C. Stein ("Stein"), is a natural person and a former owner of the plaintiff business entities who resides at 2036 Ventnor H, Deerfield Beach, FL and brings this action individually and as successor to each of the corporate entities named herein.

## THE DEFENDANTS

17. Defendant, Domenic Sarno ("Sarno" and one of the "municipal defendants"), is a natural person and mayor of the city of Springfield with a usual office address of 36 Court Street, Springfield, MA. At all times relevant to the allegations contained in this Complaint, he was employed by the defendant, City of Springfield, acting under color of state law. He is named herein both in his individual and official capacity with a residence located at 109 Carroll Street, Springfield, MA.

18. Defendant, Peter L. Sygnator ("Sygnator" and one of the "municipal defendants"), is a natural person and Chairman of the Liquor License Commission and Assistant Tax Collector and Parking Clerk for the defendant, city of Springfield with a usual office address of 36 Court Street, Springfield, MA. At all times relevant to the allegations contained in this Complaint, he was employed by the defendant, City of Springfield, acting under color of state law. He is named herein both in his individual and official

capacity with a residence located at 68 Chilson Street, Springfield, MA.

19. Municipal defendant City of Springfield ("City of Springfield") is a municipal corporation duly incorporated under the laws of the Commonwealth of Massachusetts and, at all times relevant to the allegations contained in this Complaint, was the employer of defendants, Sarno, as an elected official and "employee" of the city and Sygnator.

20. Defendant, Heriberto Flores is a natural person and President of defendant New England Farm Workers Council, Inc. with a usual place of business located at 11-13, Hampden Street, Springfield, MA.

21. Defendant, John Motto is a natural person and Chief Financial Officer of defendant New England Farm Workers Council, Inc. with a usual place of business located at 11-13, Hampden Street, Springfield, MA.

22. Defendant New England Farm Workers Council, Inc. is a foreign non-profit corporation duly organized under the laws of Connecticut and conducting business in the Commonwealth of Massachusetts with a usual business address located at 11-13 Hampden Street, Springfield, MA.

23. Defendant The Republican Company is a corporation duly organized under the laws of the Commonwealth of Massachusetts with a usual place of business located at 1860 Main Street, Springfield, MA. The Republican Company daily publishes *The Republican.*

24. Defendant Peter A. Picknelly is a natural person and Chief Executive Officer and Chairman of the Board of Peter Pan Bus lines, Inc. with a usual place of business located at 1776 Main Street, Springfield, MA and residential address of 330 Park Drive, Springfield, MA.

25. Defendant Penn National Gaming, Inc. owns, operates or has ownership interests in gaming and racing facilities with a focus on slot machine entertainment. The Company presently operates twenty-seven facilities in eighteen jurisdictions with a usual place of business located at 825 Berkshire Boulevard, Wyomissing, PA.

26. Defendant, Paul Picknelly, is a natural person and President of Falcon Hotel Corp. with a usual place of business located at One Monarch Place, Springfield, MA and a residential address of 22 Rock-A-Dundee Road, Hampden, MA.

27.  Defendant, Francis Cataldo is a natural person and former president and current member and/or director of the Springfield Business Improvement District with a usual residential address located at 285 Concord Road, Longmeadow, MA.

28.  Defendant, John M. Santaniello ("Santaniello"), is a natural person and Certified Appraiser for defendant, Richard Kane & Associates with a usual place of business located at 87 Shaker Road, East Longmeadow, MA.

29. Defendant, Robert Sluka ("Sluka"), is a natural person and Certified Appraiser for defendant, Richard Kane & Associates with a former place of business located at 87 Shaker Road, East Longmeadow, MA.

30. Defendant, Richard Kane & Associates, LTD ("Richard Kane"), is a full service commercial and residential real estate appraisal company, duly organized under the laws of the Commonwealth of Massachusetts with a usual business address located at 8 Shaker Road, East Longmeadow, MA.

### THE NON-PARTY PARTICIPANTS

31.    Non-Party Participant Charles Kingston is a natural person whose last known mailing address is P.O. Box 80568, Springfield, MA.

32.     Non-Party Participant Russell J. Omer ("Omer") is a natural person and Executive Vice President of Chicopee Savings bank with a usual business address located at 70 Center Street, Chicopee, MA.

33.     Non-Party Participant Chicopee Savings Bank is a duly registered savings bank and organized under the laws of the Commonwealth of Massachusetts with a usual business address located at 70 Center Street, Chicopee, MA.

34.     Non-Party Participant Nicholas A. Fyntrilakis is a natural person and current member and/ or director of the Springfield Business Improvement District with a usual address located at 5 Ridge Road, Hampden, MA.

35.     Non-Party Participant Anthony Cignoli is a natural person and owner and operator of A.L. Cignoli Co., a Springfield, MA based public relations and consulting firm with a usual pace of business located at One Monarch Pace, Springfield, MA and residential address of 39 Oregon Street, Springfield, MA.

36.     Non-Party participant William J. Fitchet is a natural person and former Commissioner of the Springfield police department with a usual place of business located at 130 Pearl Street, Springfield, MA and at all times relevant to the allegations contained in this complaint was employed by defendant, City of Springfield with a residential address of 63 Catalina Drive, Springfield, MA.

37.     Non-Party Participant, John Delaney is a natural person and Sargent on the Springfield police department with a usual place of business located at 130 Pearl Street, Springfield, MA and is employed by defendant, City of Springfield with a residential address of 856 Sumner Avenue, Springfield, MA.

38.     Non-Party Participant, Bruce Stebbins is a natural person and former two-term Springfield, MA city councilor and Business Development Administrator for defendant, City of Springfield. He serves as one of five members of the Massachusetts Gaming Commission with a usual place of business located at 84 State Street, 10th Floor, Boston, MA 02109 with a residential address of 35 Washington Road, Springfield, MA.

## RELEVANT TIME PERIOD

39.     The actual racketeering conduct which resulted in the plaintiffs being forced to sell the historic Paramount Theater building far below fair market value on March 4, 2011, began in early 2011. Events which led to the conspiracy and racketeering scheme by the defendants began as early as 2009 or earlier and relate to the actions by named defendants and non-party participants between 2009 and March 4, 2011 and continued for at least eight months thereafter.

## FACTS REGARDING DEFENDANTS' RACKETEERING SCHEME BACKGROUND AND FORMATION OF THE CONSPIRACY

### 1. Casino And Entertainment In the City of Springfield.

40.     With an ever increasing amount of revenue of destination casino resorts being derived from non-gaming activities and that the trend reveals that young people between the ages of 21 and 35 have little inclination to play slot machines and seldom visit casinos for gambling but, instead, prefer to go to night clubs rather than gamble, the casino industry has adopted a strategy to make significant investments through the addition of new nightlife and daytime entertainment formats and other offerings, including among other things, large nightclubs, daytime pool parties, resident and celebrity electronic dance music DJs ("EDM") and high-end celebrity chef-driven restaurants. Casino performance venues are configured to the specifications for superstar

entertainers who command high dollar contracts for single or long term engagements.

41.     The civil conspiracy and RICO defendants identified in this Complaint were aware as early as 2008 that any casino legislation to become law in Massachusetts would contain requirements to protect entertainment venues such as the historic Paramount Theater and the Skyplex.

42.     In fact, the casino legislation signed into law in 2011 did require that all casino operators and developers applying for licenses in Massachusetts to negotiate agreements with designated impacted live entertainment venues to protect them from the adverse impacts of expanded gaming in the Commonwealth. These Impacted Live Entertainment Venue Agreements would mitigate the potential negative impacts of the gaming establishments on live musical performances at impacted venues by including such measures as limiting geographic exclusivity clauses in the contracts of entertainers and making available cross-promotional marketing opportunities.

**2.**     Since the state gaming statute, as passed by the legislature, does not allow developers or operators to have venues with seating between 1,000 and 3,500 persons, all of the civil conspiracy and RICO defendants knew or should have known that the historic Paramount Theater was, in fact, one of the largest live entertainment venue in western Massachusetts and would either be part of a casino development proposal or a significant partner with a casino developer in a Live Entertainment Venue agreement. If not, live entertainment at the historic Paramount Theater would provide major competition to any casino operator in the Springfield area.

3.      **Conspiracy, Civil RICO And The "Forced Sale"**

43.     In early 2011, defendant, Flores withdrew his interest in Northeast Realty Associates, LLC and, later formed Hampden Entertainment District, Inc. with defendant, John Motto who serves as Chief Financial Officer for defendant, New England Farm Workers Council, Inc. Prior to leaving Northeast Realty Associates, LLC  and forming Hampden Entertainment District, Inc. defendant, Flores had expressed interest, on more than one occasion, to plaintiff Steven C. Stein and former business partner, Michael J. Barrasso that he was interested in purchasing the historic Paramount Theater building.

44.     Defendants Flores and Motto on behalf of defendant New England Farm Workers Council, Inc. were aware that, as a result of the actions of various defendants and non-party participants, the plaintiffs and their businesses were in financial distress.

45.      As a result, defendants Flores and Motto manipulated and orchestrated the potential purchase of the historic paramount building from the plaintiffs by having the plaintiffs sign a "Memorandum of Understanding For Purchase of Real Estate" on December 29, 2010.

46.     A February 25, 2011 closing date in the Memorandum was a ruse and an artifice by defendants Flores and Motto to have the plaintiffs believe that outstanding taxes due to the City of Springfield would be paid that day, as ordered by the city, and defendants Flores, Motto and New England Farm Workers Council, Inc. would have a bona fide appraisal and pay the plaintiffs fair market value according to such a bona fide appraisal.

47.     The document presented to the plaintiff sellers by defendants Flores and Motto and signed by the parties on December 29, 2010 had six paragraphs, did not contain a purchase price, but stated: "Whereas a formal closing on the above two pieces of real estate shall take place on or before February 25, 2011 and simultaneous with said closing, all outstanding real estate taxes,

interest and penalties owed to the City of Springfield on the above two parcels of real estate shall be paid by the Purchaser to the City of Springfield."

48.     On December 29, 2010, defendants Flores and Motto knew or should have known that the closing would not take place on February 25, 2011 as the parties had not executed a purchase and sale agreement and a bona fide appraisal had not been completed.

49.     Also on December 29, 2010, defendant Sygnator, acting in concert with defendants Flores and Motto, conducted a hearing before the License Commission, as Chairman, regarding the renewal of the liquor license for the building. Acting individually and/or in concert with other named defendants and non-party participants defendant Sygnator manipulated and orchestrated a vote by the Springfield License Commission to renew the liquor license with the condition that the license will be suspended on February 25, 2011, at midnight, unless the property is sold by that date and all back taxes and interest are paid at the closing, despite voting against the renewal.

50.     Defendant Sarno, as mayor and ardent and vocal advocate of casino gaming in Springfield, and defendant Sygnator, as Chairman of the License Commission and Deputy Tax Collector knew or should have known that defendants Flores and Motto had no intention of closing on the sale of then historic Paramount Theater building on or before February 25, 2011.

51.     Defendant Sarno, as mayor and ardent and vocal advocate of casino gaming in Springfield, and defendant Sygnator, as Chairman of the License Commission and Deputy Tax Collector, knew or should have known that defendants Flores and Motto, acting individually and/or in concert with other named defendants and non-party participants would delay the sale closing date beyond February 25, 2011 forcing the plaintiffs to sell the historic Paramount Theater building far below fair market value.

52.    In fact, defendants Flores and Motto not only delayed the closing date beyond February 25, 2011, but refused to communicate with or provide the plaintiffs with a bona fide appraisal which the plaintiffs were led to believe from the defendants was well above two million ($2,000,000.00) dollars.

53.    Defendant Sarno, as mayor and ardent and vocal advocate for casino gaming in Springfield, and defendants Flores, Motto and Sygnator knew or should have known that the historic Paramount Theater building was originally offered for sale in 2006 by Hunneman Commercial Real Estate Services Worldwide of 303 Congress Street, Boston, MA for three million one hundred thousand ($3,100,000.00) dollars.

54.    Defendant Sarno, as mayor and ardent and vocal advocate of casino gaming in Springfield, and defendants, Flores, Motto and Sygnator knew or should have known that in February of 2006, the historic Paramount Theater building and adjacent Gridiron Street parking lot were appraised by Smith & Reynolds Realtors and Appraisers for two million three hundred seventy-five thousand ($2,375,000.00) dollars.

55.    Defendant Sarno, as mayor and ardent and vocal advocate for casino gaming in Springfield and defendants, Flores, Motto and Sygnator knew or should have known that the plaintiffs in 2000 spent a total of one million three hundred thousand ($1,300,000.00) for massive renovations on the historic Paramount Theater building.

56.    Defendant Sarno, as mayor and ardent and vocal advocate for casino gaming in Springfield and defendants, Flores, Motto and Sygnator, acting individually and/or in concert with each other and/or other named defendants and non-party participants, in furtherance of the conspiracy and racketeering scheme, knew that the sale of the historic Paramount Theater building would not close on or before February 25, 2011 and that the plaintiffs would not be able

to make the required payment to the City of Springfield.

57.     The defendants Flores and Motto, by intentionally delaying the closing of the sale of the

historic Paramount Theater building beyond the deadline date, arbitrarily set by defendant

Sygnator, furthered the conspiracy and racketeering scheme by placing the plaintiffs in a position

where they did not have the funds expected at the closing to pay the outstanding taxes by the

February 25, 2011 deadline date.

58.     Knowing that the sale of the property would not close on or before February 25, 2011, the

conduct of defendants Flores and  Motto, acting individually and/or in concert with one another

and other named defendants and non-party participants, furthered the conspiracy and

racketeering enterprise with knowledge that they would force the plaintiffs to sell the historic

Paramount Theater building for far less than fair market value by orchestrating the production of

an inaccurate and flawed appraisal report to be presented at the closing after the  February 25,

2011 deadline date arbitrarily set by defendant Sygnator.

59.     On February 25, 2011, defendants Flores and Motto, acting individually and/or in concert

with other named defendants and non-party participants, all to further the conspiracy and

racketeering scheme, provided the plaintiffs with  "Loan Check" number 10149077 drawn on

Chicopee Savings bank in the amount of fifty-four thousand ($54,000.00) dollars payable to

"City of Springfield." The "Loan Check" noted "Re: Loan proceeds – NEFWC – Tax 1676-1708

Main and 33 Gridiron."

60.     Municipal defendant Sygnator, after receiving payment of "Loan Check" number

10149077 gave the plaintiffs receipt number 151435 for fifty-four thousand ($54,000.00) dollars

from "Paramount Realty Investment LLC, 1700 Main Street, Springfield, MA 01103" knowing

that payment was actually made by defendants Flores and Motto of defendant New England

Farm Workers Council, Inc. On information and belief, defendant Sarno, as mayor and ardent

and vocal advocate for casino gaming in Springfield, had knowledge of the transaction at City

Hall on February 25, 2011.

61.     Defendants Flores, Motto, Santaniello, Kane and Richard Kane & Associates, acting

individually and/or in concert with each other, other named defendants and non-party

participants, intentionally devalued the property, failed to establish a fair market value for the

property, and further, completely discounted and ignored the fact that defendant Motto reported

to defendant Santaniello, defendant Kane and/or defendant Richard Kane & Associates that the

property was encumbered by a purchase and sale agreement in the amount $2,243,000.00,

despite the fact that no such purchase and sale agreement existed.

62.     According to the "Summary Appraisal Report" signed by defendant John M. Santaniello

on February 25, 2011, the purpose of the appraisal was to "assist Chicopee Savings Bank (the

client) with the collateral valuation of the above mentioned property in conjunction with

mortgage financing consideration." Defendants Flores and Motto intentionally failed to disclose

the appraisal to the plaintiffs at that time.

63.     Non-party participant, Chicopee Savings bank has been the primary lender for defendants

Flores, Motto and New England Farm Workers Council, Inc., which has been an investor and

shareholder in the bank since, at least, 2007.

64.     The appraisal which defendants Flores Motto and New England Farm Workers Council,

Inc., acting individually and/or in concert with other named defendants and non-party

participants, wrongfully relied upon as the fair market value of the property, as provided to non-

party participant Chicopee Savings bank, failed to meet Uniform Standards of Professional

Appraisal Practice ("USPAP") and was generally flawed as follows:

    a.   Failed to include discussion with owners/sellers as to value;

    b.   Erroneously and falsely reported a review and search of larger-sized entertainment venues leased in the greater Springfield area for the purpose of providing comparable sales;

    c.   Included erroneous and false information that "the property was encumbered by a purchase and sale agreement in the amount $2,243,000.00";

    d.   Included erroneous and false information that "the subject property had been offered to the market for sale by the real estate brokerage firm of NAI Hunneman who is located within the City of Boston, Massachusetts" for $2,100,000, when in fact NA Hunneman had offered the property for $3,100,000;

    e.   Failed to include and offer an opinion of the value of a turn-key restaurant, formerly known as Luva Restaurant;

    f.   Failed to consider or report that the buyer, defendant New England Farm Workers Council, Inc. had requested that the plaintiffs not operate or sell the restaurant as the defendant had secured a tenant ready to occupy the space upon the closing on the sale of the historic Paramount building;

    g.   Erroneously and falsely rated the property's "Functional Utility" as "Fair to Average" which was based on assumptions totally contradictory to the facts in existence at the time of the appraisal;

    h.   Erroneously and falsely reported that the large theater portion of the historic Paramount building lacked viable tenants. The sellers desired to negotiate a long-term lease and remain as a tenant in the large theater which was vehemently opposed by the buyer.

    i.   Erroneously and falsely reported value of the second floor by ignoring the fact that the second floor was easily dividable for multiple tenants;

    j.   Utilized false assumptions and/or ignored others in forming opinion of value with the income approach method by failing to consider potential income for the space formerly occupied by Luva Restaurant;

    k.   Utilized false assumptions as to use of the theater which under rated the property as defendants Santaniello, Kane and Richard Kane & Associates lacked sufficient qualifications, experience and knowledge in the areas of music, talent booking, entertainment, hospitality marketing, entertainment

venue operations, facility management and the overall marketing of concerts, function facility management, catering and other disciplines required to form opinions as to value of the historic Paramount building.

65.     On March 4, 2011 the parties finally closed on the sale of the historic Paramount Theater building and adjacent parking lot when defendants Flores and Motto knew that the plaintiffs were in financial distress, that defendant New England Farm Workers Council, Inc. had secured the property's liquor license by paying the outstanding taxes due to defendant Sygnator on the arbitrary date enforced by him from "Loan Proceeds," and, for the first time, disclosed the appraisal prepared by defendants, Santaniello, Kane and Richard Kane & Associates.

66.     The warranty deed delivered to defendants Flores, Motto and New England Farm Workers Council, Inc. was recorded at the Hampden County Registry of Deeds located in Springfield MA at 3:07 p.m. on March 4, 2011 with a listed purchase price of one million eight hundred thousand two hundred twenty-five ($1,825.00) dollars.

67.     On March 4, 2011, defendants Flores and Motto revealed, for the first time that, on behalf of defendant New England Farm Workers Council, Inc. they had secured a three hundred thousand ($300,000.00) Community Development Block grant from defendant city of Springfield and defendant Sarno, as mayor and ardent and vocal advocate for casino gaming in Springfield.

68.     At or about the time of the closing on March 4, 2011,  the plaintiff sellers of the historic Paramount Theater building and adjacent parking lot questioned the flawed appraisal, depressed valuation and reliance by defendants Flores and Motto on an appraisal for the lender to "assist Chicopee Savings Bank (the client) with the collateral valuation of the above mentioned property in conjunction with mortgage financing consideration" and not for the purpose of market analysis and to establish fair market value, defendant Motto told the plaintiffs they could take a

charitable deduction.

69.     In fact, defendant Motto erroneously told the plaintiffs that since defendant New

England Farm Workers Council, Inc. was a bona fide charitable corporation they could take

hundreds of thousands of dollars of charitable deductions for personal property items, which

were part and parcel of the sale of the real estate, such as a grand chandelier, an organ and other

"specialty items."

70.     Defendants Flores, Motto and New England Farm Workers Council knew or should have

known that the plaintiffs could not legally or lawfully be entitled to take a charitable deduction

upon filing of their tax returns to the Internal Revenue Service under the circumstances of this

transaction, the "Forced Sale."

71.     One day before the "forced sale" of the historic Paramount Theater building on March 3,

2011, and, as evidence of and in furtherance of the orchestrated conspiracy and racketeering

scheme by defendant Sarno and other named defendants and non-party participants, defendant

Motto ($200.00) and non-party participants Omer ($200.00),  Fyntrilakis ($200.00) and Peter A.

Picknelly ($500.00) made campaign contributions to municipal defendant Sarno, as mayor and

ardent and vocal advocate for casino gaming in Springfield, as reported on the official website of

the Massachusetts Office of Campaign and Political Finance. In fact, between 2009 and 2011 the

Picknellys, collectively along with Melissa Picknelly of 330 Park Drive, Springfield, MA,

contributed $4325.00 to municipal defendant Sarno.

72.     The manner in which defendants Flores, Motto and New England Farm Workers

Council, Inc. conspired, orchestrated and manipulated the "forced sale" of the historic Paramount

Theater building and adjacent parking lot was for the sole purpose to secure one of the largest

entertainment venue in Springfield so the defendants could partner with a potential casino

gaming developer in the city of Springfield.

73.     After the "forced sale" of the historic Paramount Theater building and adjacent parking lot, on or about March 7, 2011, defendant Sarno, as mayor and ardent and vocal supporter of casino gaming in Springfield, was quoted by defendant *Springfield Republican* as saying: "This is another economic develop(sic) catalyst in our continuing revitalization strategies to move the city forward." The Paramount is a "historic building with a lot of tradition, and I'm sure the Farm Workers Council will continue to build on that."

74.     The reported comments by municipal defendant Sarno, as mayor and ardent and vocal advocate for casino gaming in Springfield, evidenced the fact that, in addition to awarding defendant New England Farm Workers Council, Inc. a three hundred thousand ($300,000.00) Community Development Block Grant, municipal defendant Sarno furthered the conspiracy and racketeering scheme against the plaintiffs with his pronounced "revitalization strategies."

75.     As early as September, 2011 it was reported by defendant *Springfield Republican* that defendant Penn National Gaming of Wyomissing, PA was interested establishing casino gaming in western Massachusetts, realizing that the pending casino legislation in Massachusetts designated a gaming casino for the geographic region of western Massachusetts.

76.     In fact, in September of 2011, non-party participant, Bruce Stebbins, as Business Development Administrator for municipal defendant, City of Springfield, showed the former Westinghouse property, ultimately secured by casino developer Ameristar Casinos, to two employees from defendant Penn National Gaming, Inc., as further evidence of the conspiracy and racketeering between and among the defendants and non-party participants which six (6) months earlier led to the "forced sale" of the historic Paramount Theater.

77.     On information and belief, defendant Flores as President of the non-profit defendant,

New England Farm Workers Council, Inc. began development discussions with defendant, Penn National Gaming, Inc. of Wyomissing, PA shortly before or after the "forced sale" of the historic Paramount building and adjacent parking lot, if not before.

78.     On or about December 20, 2012, defendant Penn National Gaming of Wyomissing, PA publicly revealed plans to partner with defendant, New England Farm Workers Council, Inc. to revitalize the historic Paramount Theater building which, along with plaintiff, Gridiron Parking, LLC was the subject of the "forced sale" on March 4, 2011. Its $807 million gaming casino, in partnership with defendant, New England Farm Workers Council, Inc. was revealed inside the historic Paramount Theater building. The December 20, 2012 date is the time at which the plaintiffs discovered the conspiracy and racketeering scheme between and among the various defendants and non-party participants.

79.     The agreement included financial support for the restoration project and a lease agreement that would allow defendant, Penn National Gaming of Wyomissing, PA to use the venue for live entertainment, as had been provided and further planned by the plaintiffs before the "forced sale."

80.     At the time of the announcement, defendant Heriberto Flores was quoted by defendant *Springfield Republican* as saying: "Penn National came to us early on in the process to include us as partners in their proposal to revitalize Springfield. We are excited to have a signed agreement that will revitalize the Paramount Theater and bring a diverse group of entertainers that will appeal to not just one segment of our city, but to all our citizens."

81.     During fiscal year 2012, beginning on July 1, 2011 and ending on June 30, 2012, defendants Flores, Motto and New England Farm Workers Council, Inc. employed non-party participant Kingston as a "consultant" and paid non-party participant Kingston sixty thousand

($60,000.00) dollars as reported to the Public Charities Division of the Massachusetts Attorney General's Office.

82.     On or about, April 12, 2013, defendant, Penn National Gaming of Wyomissing, PA publicly revealed an artist's rendering and view of the 21st century "village square" concept where the offices of non-party participant, *Springfield Republican* would be relocated to the Hollywood Casino Springfield Development along with the historic Paramount Theater building. The rendering and "village square" concept was published by defendant *Springfield Republican*, which earlier had executed an agreement to sell its 1860 Main Street property to Penn National Gaming of Wyomissing, PA for in excess of forty million ($40,000,000.00) dollars, on information and belief.

83.     Despite furthering the conspiracy and racketeering scheme against the plaintiffs, municipal defendant Sarno, as mayor and ardent and vocal advocate of casino gaming in Springfield, on or about April 30, 2013, rejected the casino gaming proposal of defendant Penn National Gaming, Inc. of Wyomissing, PA and defendant New England Farm Workers Council, Inc., which also included the sale of the property of defendant *Springfield Republican* at 1860 Main Street, Springfield, MA, and awarded the casino gaming development to rival MGM Resorts International.

84.     In furtherance of the conspiracy and racketeering scheme and further evidencing the need to acquire the historic Paramount Theater building at the "forced sale" for casino gaming development in Springfield, defendant, Flores, on or about, October 18, 2013 was quoted by defendant *Springfield Republican*, as stating: "Of course I've been talking with MGM. We are looking for ways to work together should they get their license. This is business. No one should

ever take business personally. Just because one partner leaves that doesn't stop progress. You just have to keep moving."

85.     The statement by defendant Flores above, as reported by defendant *Springfield Republican,* is further evidence that the defendants and non-party participants, acting in concert with one another, knew that the historic Paramount Theater would be central to any casino gaming proposal and conspired to force the sale at well below fair market value and severely financially damaged the plaintiffs.

### ACTIONS BY NAMED DEFENDANTS, NON-PARTY PARTICIPANTS WHICH RELATE TO CONSPIRACY, RACKETEERING AND CIVIL RIGHTS VIOLATIONS

86.     In furtherance of the conspiracy and racketeering scheme, defendants, Sarno, as mayor and ardent and vocal advocate for casino gaming in Springfield, Sygnator and Flores, acting individually and/or in concert with others, began to take aim at the plaintiffs, to ultimately destroy their public image, inflict maximum economic damage and force the sale of the historic Paramount building for a price far below its fair market value.

87.     In June, 2008, the plaintiffs were forced to close the historic Paramount Theater building as it did not meet the Massachusetts code for sprinklers and sprinkler maintenance. Municipal defendants Sarno and Sygnator along with defendant Flores and other non-party participants knew or should have known that the closing of the historic Paramount Theater building would lead plaintiff Stein and former business partner, Michael Barrasso to severe economic hardship.

88.     Thereafter, in order to destroy the plaintiffs' public image and to inflict maximum economic damage, defendant Sarno, as mayor and ardent and vocal advocate of casino gaming in Springfield, acting individually and/or in concert with named defendants and non-party

participants, began the conspiracy, racketeering scheme and civil rights violations against the

plaintiffs, by engaging in the following conduct:

a. In 2009, publicly pronounced that he intended to require that entertainment establishments with events for patrons eighteen years and older obtain a permit from the city of Springfield, knowing that the plaintiffs were one of only a few establishments in the city conducting such events, without a single violation of its entertainment license or liquor license;

b. In 2009, established a permit application process for establishments conducting events for patrons eighteen years and older, knowing the plaintiffs were the only such establishment, with the intention of unlawfully and arbitrarily denying their applications;

c. In 2009, individually and/or in concert with defendant Sygnator and other named defendants or non-party participants, caused a headline and story "City To Own Hippodrome" for failure to pay back taxes to appear in the *Springfield Republican*, with the knowledge that such foreclosure for back taxes had not begun and that the plaintiffs had not been notified of such foreclosure process;

d. Thereafter, individually and/or in concert with certain named defendants or non-party participants, caused a barrage of multiple articles to be published in *the Springfield Republican* which maligned the integrity of plaintiff, Stein and former business partner Barrasso, all with the intent to destroy the plaintiffs' public image and to inflict maximum economic damage;

e. Thereafter, despite knowing that the plaintiffs employed the largest number of uniformed off-duty, paid Springfield police officers, defendant, Sarno, began making statements that he "will never approve a license for the Skyplex";

f. In furtherance of the conspiracy and racketeering scheme, municipal defendant, Sarno removed a letter of support from the plaintiffs' license application which was written and signed by Sargent John Delaney of the Springfield police department;

g. In or about June, 2009, in furtherance of the conspiracy and racketeering scheme, municipal defendant Sarno, acting individually and/or in concert with other named defendants or non-party participants caused electronic mail or other correspondence and communication to be circulated in city hall about the plaintiffs' property with comments such as: "where does this leave the meetings we had over this property";

h. Thereafter, municipal defendant Sarno caused a letter to be written by non-party participant Police Commissioner, William Fitchet declaring that entertainment

events for patrons eighteen years and older were a problem in the city, knowing that the plaintiffs were the only entertainment operators applying for such a license and that the plaintiffs employed the largest off-duty, paid uniformed officers in the city without any violations on their entertainment license or liquor license.

89.     On or about June 19, 2009, plaintiff, Creative Entertainment Concepts, Inc. d/b/a Skyplex filed a civil law suit in Hampden Superior Court against defendant, Sarno and the City of Springfield seeking declaratory and injunctive relief for the promulgation and enforcement of rules for so-called "21 & Under Nights," Docket No.: 09-603.

90.     As a result of the plaintiff, Creative Entertainment Concepts, Inc. d/b/a Skyplex exercising its constitutional right to seek redress for the promulgation and enforcement of rules for so-called "21 & Under Nights" directed at the plaintiffs, municipal defendant, Sarno, acting individually and/or in concert with other named defendants and non-party participants conspired to further violate the constitutional rights of the plaintiffs.

91.     Despite knowledge of a spate of serious crimes, including shootings, gun violations, assault, malicious damage and murder in the entertainment district relative to night clubs other than the plaintiffs' in 2008 through 2011, municipal defendant, Sarno, acting individually and/or in concert with other named defendants and non-party participants, continued the conspiracy and racketeering enterprise against the plaintiffs, all while violating their constitutional civil rights, as described herein.

92.     On or about February 17, 2009, in response to a shooting at the 1800 Club located at 282 Worthington Street and another in a parking lot near the Zone on Worthington Street, defendant, Sarno again publicly stated he wanted to ban so-called "21 & Under Nights, all with the knowledge that none of these incidents were, in any way, related to the entertainment establishments of the plaintiffs.

93.     Despite  the fact that the crimes occurred at entertainment establishments other than that of the plaintiffs', municipal defendant Sarno, acting individually and/or in concert with other named defendants and/or non-party participants continued the conspiracy and racketeering scheme against the plaintiffs, knowing there was not a single violation against their entertainment license or liquor license.

94.     On or about March 4, 2010 , defendant Sarno, acting individually and/or in concert with other named defendants and non-party participants, intentionally, arbitrarily and unlawfully ordered that the off-duty, paid uniformed Springfield police detail hired by the plaintiff and assigned for that night be canceled, all in violation of the plaintiffs' constitutional civil rights.

96.     The ongoing conspiracy and racketeering scheme between and among the named defendants and non-party participants also included wrongful actions which led the plaintiffs being denied a contract renewal for the Stearns Square concert entertainment series concession.

97. Additionally, beginning in 2004, plaintiff, Creative Entertainment Concepts, Inc. along with local businessmen, were awarded the concession contract by the Springfield Business Improvement District ("BID") for the Stearns Square concert entertainment series. The contract was for a two-year period (2004-2005). Successive contracts were awarded, including 2006-2007 and 2008-2009.

98. The parties paid the BID $18,500 per year for the rights to operate the beverage concessions during the Stearns Square concert entertainment series.

99.  After the first couple years, plaintiff Steven C. Stein's former business partner, Michael J. Barrasso began booking the concert entertainment acts, a $10,000 value to the BID. Individual concert entertainment contracts were directly between the BID and individual concert entertainment acts.

100. As further evidence of the conspiracy and racketeering activity, beginning in the fall of 2009, on information and belief, non-party participants, Nicholas A. Fyntrilakis and Francis J. Cataldo began sending "messages" to Michael J. Barrasso that the parties would not be awarded the 2010-2011 concession contract.

101. Thereafter, in spring of 2010, the parties completed their application to the BID as they had done in the past contract years. This time, however, the concession contract was awarded to Paul Picknelly and the Springfield Sheraton.

102. Defendant, Paul Picknelly, as a member of the Board of Directors of the BID, at that time had access to and knew what the Plaintiff had submitted for its offer to renew its contract for the 2010-2011 summer concert series.

103. In an effort to advance the civil conspiracy and racketeering activity against this Plaintiff and its owner, plaintiff Steven Stein and former  business partner Michael Barrasso, Defendants Paul Picknelly and Cataldo, acting individually and/or in concert with others, including but not limited to municipal defendants Sarno and Sygnator and non-party participant Fyntrilakis, intentionally and unlawfully deprived the Plaintiff of the 2010-2011 contract renewal, all as part of the continuing civil conspiracy and racketeering activity.

104. As part of the civil conspiracy and racketeering activity, the Defendants, acting individually and/or in concert with one another, conspired to have the summer concert entertainment and concessions contract awarded to defendant Paul Picknelly and Falcon Hotel Corp.

105. As a result of this intentional and unlawful conduct, this Plaintiff and Plaintiff, Steven Stein and his former business partner Michael Barasso suffered severe financial harm, as a result of these defendants intentional acts to discredit and publicly embarrass them and intentionally and unlawfully place them in a financial position whereby the defendants knew or should have

known they would no longer be able to remain in business, would default on payments to

vendors and defendant, City of Springfield and ultimately force the Plaintiffs' subsidiary,

Paramount Realty Investments, LLC to sell the related entertainment asset and venue, the

historic Paramount Theatre building far below fair market value in 2011.

106.     Acting individually and/or in concert with other named defendants and non-party

participants, defendant, Sarno furthered the conspiracy and racketeering scheme in order to

destroy the plaintiffs' public image and to inflict maximum economic damage as alleged herein,

all in violation of the plaintiffs' constitutional civil rights.

## COUNT I – 42 U.S.C. § 1983 VIOLATION

**(Plaintiffs v. Sarno, Sygnator, City of Springfield)**

107.     The plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1

through 106 above, as though fully set forth herein.

108.     The  conduct of municipal defendants Sarno and Sygnator, acting under the color of state

law, as alleged herein, and acting individually and/or in concert with defendants Flores, Motto,

New England Farm Workers Council, Inc., The Republican Company, Penn National Gaming,

Inc., John M. Santaniello, Robert Sluka and Richard B. Kane & Associates, violated the

plaintiffs' constitutional due process rights as secured by the United States Constitution, 42

U.S.C. §§ 1983 and 1985 and M.G.L. c. 12 § 11I (Massachusetts Civil Rights Act).

109.     As an actual, legal and proximate result of the foregoing, the plaintiffs suffered

significant financial damages and injury as a result of the forced sale of the historic Paramount

Theater and adjacent parking lot for which these defendants are liable.

110.     Each of the municipal defendants, Sarno and Sygnator are being sued for violating the

plaintiffs' due process rights joint and severally and in both their individual and/or official

capacities.

## COUNT II – M.G.L. c. 12 §§ 11H,  11I VIOLATION

**(Plaintiffs v. Sarno, Sygnator, Flores, Motto, Paul Picknelly, Peter Picknelly, Cataldo)**

111.    The plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 110 above, as though fully set forth herein.

112.    The conduct of these defendants, acting individually and/or in concert with defendants, New England Farm Workers Council, Inc., The Republican Company, Penn National Gaming, Inc., John M. Santaniello, Robert Sluka and Richard B. Kane & Associates, by use of threats, coercion and intimidation, violated the plaintiffs' constitutional due process rights and property rights all as secured by the M.G.L. c. 12 §§ 11H, 11I (Massachusetts Civil Rights Act).

113.    As an actual, legal and proximate result of the foregoing, the plaintiffs suffered significant financial damages and injury as a result of the forced sale of the historic Paramount Theater and adjacent parking lot for which these defendants are liable.

114.    Each of the municipal defendants, Sarno and Sygnator are being sued for violating the plaintiffs' due process rights and property rights joint and severally and in both their individual and/or official capacities.

## COUNT III - FIRST AMENDMENT RETALIATION

**(Plaintiffs v. Sarno, Sygnator, City of Springfield)**

115.    The plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 114 above, as though fully set forth herein.

116. Municipal defendants Sarno and Sygnator, acting under the color of state law, as alleged herein, individually and/or in concert with one another and/or several other named defendants and non-party participants, engaged in reckless and wanton conduct designed to chill the plaintiffs' First Amendment rights as secured by the United States Constitution, 42 U.S.C. §§

1983 and 1985 and the Massachusetts Civil Rights Act, M.G.L. c. 12, §§ 11H, 11I.

117.    Specifically, the municipal defendants undertook such illegal and unconstitutional action, as described herein, against these plaintiffs solely based upon their decision to exercise their First Amendment rights to redress grievances by publicly complaining of the defendants action and, by plaintiff, Creative Entertainment Concepts, Inc. d/b/a Skyplex filing a civil law suit in Hampden Superior Court against municipal defendants, Sarno and the City of Springfield seeking declaratory and injunctive relief for the promulgation and enforcement of rules for so-called "21 & Under Nights," Docket No.: 09-603 in Hampden Superior Court.

118.    As an actual, legal and proximate result of the foregoing, the plaintiffs suffered significant financial damage and injury.

119.    Each of the municipal defendants is sued for First Amendment retaliation, jointly and severally, in both their individual and/or official capacities.

## COUNT IV – RACKETEERING AND INFLUENCED CORRUPT ORGANIZATIONS

**(Plaintiffs v. Sarno, Sygnator, City of Springfield, Flores, Motto, New England Farm Workers Council, Inc., The Republican Company, Peter A. Picknelly, Penn National Gaming, Inc., Paul Picknelly, Francis Cataldo, John M. Santaniello, Robert Sluka, Richard Kane & Associates)**

The RICO Enterprise:

120.    The plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 119 above, as though fully set forth herein.

121.    Municipal defendants, Sarno and Sygnator, acting together with defendants, Flores, Motto, New England Farm Workers Council, Inc., The Republican Company, Penn National Gaming, Inc., John M. Santaniello, Robert Sluka and Richard Kane & Associates engaged in various illegal acts as described herein to force the sale of the historic Paramount Theater far below fair market value,  is an enterprise within the meaning of 18 U.S.C. § 1961 (4), which is

engaged in, or the activities of which, affect interstate commerce.

122.     Municipal defendants Sarno and Sygnator, associated with and acting together with

defendants, Flores, Motto, New England Farm Workers Council, Inc., The Republican Company,

Penn National Gaming, Inc., John M. Santaniello, Robert Sluka and Richard Kane & Associates

for the common purpose of engaging in the pattern of racketeering activity described herein.

In fact, on December 29, 2010 municipal defendant Sygnator, conducted a hearing before the

License Commission, as Chairman, regarding the renewal of the liquor license for the plaintiffs'

building.

123.     Acting individually and/or in concert with other named defendants, including but not

limited to municipal defendant Sarno and defendants Flores and Motto, and non-party

participants, municipal defendant Sygnator manipulated and orchestrated a vote by the

Springfield License Commission to renew the liquor license with the condition that the license

will be suspended on February 25, 2011, at midnight, unless the property is sold by that date and

all back taxes and interest are paid at the closing, despite his vote against the renewal, all in

furtherance of the conspiracy, artifice to defraud and illegal racketeering activity

124.     Municipal defendant Sarno, as mayor and ardent and vocal advocate of casino gaming in

Springfield, and municipal defendant Sygnator, as Chairman of the License Commission and

Deputy Tax Collector conspired with defendants Flores and Motto by not closing on the sale of

then historic Paramount Theater building on or before February 25, 2011.

Municipal defendant Sarno, as mayor and ardent and vocal advocate of casino gaming in

Springfield  and defendant Sygnator, as Chairman of the License Commission and Deputy Tax

Collector, conspired with defendants Flores and Motto, and other named defendants and non-

party participants to delay the sale closing date beyond February 25, 2011 all for the purpose of

forcing the plaintiffs to sell the historic Paramount Theater building far below fair market value.

125.    In fact, defendants Flores and Motto, acting in concert with municipal defendants Sarno and Sygnator, not only delayed the closing date beyond February 25, 2011, but refused to communicate with or provide the plaintiffs with a bona fide appraisal which the plaintiffs were led to believe from the defendants was well above two million ($2,000,000.00) dollars, all in furtherance of the conspiracy and illegal racketeering.

126.    Municipal defendant Sarno, as mayor and ardent and vocal advocate for casino gaming in Springfield, and defendants Flores, Motto and municipal defendant  Sygnator  knew or should have known that the historic Paramount Theater building was originally offered for sale in 2006 by Hunneman Commercial Real Estate Services Worldwide of 303 Congress Street, Boston, MA for three million one hundred thousand ($3,100,000.00) dollars.

127.    Municipal defendant Sygnator, after receiving payment of "Loan Check" number 10149077 gave the plaintiffs receipt number 151435 for fifty-four thousand ($54,000.00) dollars from "Paramount Realty Investment LLC, 1700 Main Street, Springfield, MA 01103" knowing that payment was actually made by defendants Flores and Motto of defendant New England Farm Workers Council, Inc. On information and belief, defendant Sarno, as mayor and ardent and vocal advocate for casino gaming in Springfield, had knowledge of the transaction at City Hall on February 25, 2011.

128.    As further evidence of the conspiracy and illegal racketeering activity by municipal defendants, Sarno and Sygnator, individually and/or in concert with others, one day before the "forced sale" of the historic Paramount Theater building on March 3, 2011, defendants Motto ($200.00) and Peter A. Picknelly ($500.00) and non-party participants Omer ($200.00) and Fyntrilakis ($200.00) made campaign contributions to municipal defendant Sarno, as mayor and

ardent and vocal advocate for casino gaming in Springfield, as reported on the official website of

the Massachusetts Office of Campaign and Political Finance. In fact, between 2009 and 2011 the

Picknellys, collectively including Melissa Picknelly of 330 Park Drive, Springfield, MA,

contributed $4,325.00 to municipal defendant Sarno.

129.    After the "forced sale" of the historic Paramount Theater building and adjacent parking

lot on or about March 7, 2011, and in furtherance of the conspiracy and racketeering scheme,

municipal defendant Sarno, as mayor and ardent and vocal supporter of casino gaming in

Springfield, was quoted by defendant *Springfield Republican* as saying: "This is another

economic develop(sic) catalyst in our continuing revitalization strategies to move the city

forward. The Paramount is a "historic building with a lot of tradition, and I'm sure the Farm

Workers Council will continue to build on that."

130.    The reported comments by municipal defendant Sarno, as mayor and ardent and vocal

advocate for casino gaming in Springfield, evidenced the fact that, in addition to awarding

defendant New England Farm Workers Council, Inc. a three hundred thousand ($300,000.00)

Community Development Block Grant, municipal defendant Sarno furthered the conspiracy and

racketeering scheme against the plaintiffs with his pronounced "revitalization strategies."

131.    During the course of the conspiracy and racketeering scheme the various defendants and

non-party participants transmitted or caused to be transmitted information by means of wire and

documents by mail as alleged herein for the sole purpose of continuing the racketeering scheme

or artifice to defraud.

132.    Such mailings and calls constitute mail fraud and wire fraud pursuant to 18 U.S.C. § 1341

and 18 U.S.C. § 1343, respectively.

## <u>COUNT IV – BREACH OF CONTRACT</u>

**(Plaintiffs v. Flores, Motto, New England Farm Workers Council)**

133.     The plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 132 above, as though fully set forth herein.

134.     By relying on an appraisal prepared by defendants John M. Santaniello, Robert Sluka and Richard Kane & Associates which defendants Flores, Motto and New England Farm Workers Council knew to be far below fair market value, said defendants breached their contract with the plaintiffs for the sale of the historic Paramount Theater and adjacent parking lot.

135.     By failing intentionally failing to disclose the appraisal, which the defendants knew to be far below fair market value, in a timely manner, said defendants breached their contract with the plaintiffs for the sale of the historic Paramount Theater and adjacent parking lot.

136.     By relying on an appraisal which failed to meet the Uniform Standards of Professional Appraisal Practice to intentionally devalue the fair market value of the building said defendants breached their contract with the plaintiffs for the sale of the historic Paramount Theater and adjacent parking lot.

137.     As a result of the defendants' breach of their contract for the sale of the historic Paramount Theater and adjacent parking lot the plaintiffs have suffered damages and severe economic loss for which said defendants are liable.

**COUNT V -  BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

**(Plaintiffs v. Flores, Motto, New England Farm Workers Council)**

138.     The plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 137 above, as though fully set forth herein.

139.     By relying on an appraisal prepared by defendants John M. Santaniello, Robert Sluka and Richard Kane & Associates which defendants Flores, Motto and New England Farm Workers

Council knew to be far below fair market value, said defendants breached their duty of good faith and fair dealing owed to the plaintiffs for the sale of the historic Paramount Theater and adjacent parking lot.

140.    By relying on an appraisal prepared by defendants John M. Santaniello, Robert Sluka and Richard Kane & Associates which defendants Flores, Motto and New England Farm Workers Council knew to be far below fair market value, said defendants breached their duty of good faith and fair dealing owed to the plaintiffs for the sale of the historic Paramount Theater and adjacent parking lot.

141.    By intentionally failing to disclose the appraisal, which the defendants knew to be far below fair market value, in a timely manner, said defendants breached their duty of good faith and fair dealing owed to the plaintiffs for the sale of the historic Paramount Theater and adjacent parking lot.

142.    By reporting that the historic Paramount Theater and adjacent parking lot was encumbered by a purchase and sales agreement in the amount of $2,243,000.00, said defendants breached their duty of good faith and fair dealing owed to the plaintiffs for the sale of the historic Paramount Theater and adjacent parking lot.

143.    As a result of the defendants' breach of their duty of good faith and fair dealing owed to the plaintiffs, for the sale of the historic Paramount Theater and adjacent parking lot the plaintiffs have suffered damages and severe economic loss for which said defendants are liable.

### COUNT V – INTERFERENCE WITH CONTRACTUAL RELATIONS

**(Plaintiffs v. Flores, Motto, New England Farm Workers Council)**

144.    The plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 143 above, as though fully set forth herein.

145.     By relying on an appraisal prepared by defendants John M. Santaniello, Robert Sluka and Richard Kane & Associates which defendants Flores, Motto and New England Farm Workers Council knew to be far below fair market value, for the sale of the historic Paramount Theater and adjacent parking lot,said defendants intentionally interfered with the plaintiffs contractual relations with other businesses, vendors and entertainers

146.     By relying on an appraisal prepared by defendants John M. Santaniello, Robert Sluka and Richard Kane & Associates which defendants Flores, Motto and New England Farm Workers Council knew to be far below fair market value, for the sale of the historic Paramount Theater and adjacent parking lot, said defendants intentionally interfered with the plaintiffs' contractual relations with other businesses, vendors and entertainers

147.     By failing intentionally failing to disclose the appraisal, which the defendants knew to be far below fair market value, in a timely manner, for the sale of the historic Paramount Theater and adjacent parking lot, said defendants intentionally interfered with the plaintiffs' contractual relations with other businesses, vendors and entertainers.

148.     As a result of the defendants' intentional interference with plaintiffs' contractual relations for the sale of the historic Paramount Theater and adjacent parking lot the plaintiffs have suffered damages and severe economic loss for which said defendants are liable.

## COUNT VII – CIVIL CONSPIRACY

**(Plaintiffs v. Sarno, Sygnator, City of Springfield, Flores, Motto, New England Farm Workers Council, The Republican Company, Peter A. Picknelly, Penn National Gaming, Inc., Paul Picknelly, Francis Cataldo, John M. Santainello, Robert Sluka, Richard Kane & Associates)**

149.     The plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 148 above, as though fully set forth herein

150.    Municipal Defendants Sarno and Sygnator, acting in concert with all remaining and/or non-party participants, by agreement, scheme and/or artifice, intentionally, maliciously and recklessly conspired to injure the plaintiffs and inflict the maximum economic damage and force the sale of the historic Paramount Theater and adjacent parking lot for a price far below fair market value, breached the contract for sale of the property, interfered with plaintiffs' advantageous and business relations, and, through racketeering activities, otherwise financially harmed the plaintiffs.

151.    As a result of the civil conspiracy of the defendants as described herein, the plaintiffs have suffered damages and severe economic loss for which said defendants are liable.

### COUNT VIII – M.G.L. c. 93A, §§ 2, 11 VIOLATION

**(Plaintiffs v. Flores, Motto, New England Farm Workers Council)**

152.    The plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 151 above, as though fully set forth herein

153.    Defendant New England Farm Workers Council, Inc. has committed unfair and deceptive acts or practices in their business dealings with the plaintiffs.   These unfair and deceptive practices include misrepresentation, coercion, and conduct in derogation of known contractual obligations.

154.    The transactions between the parties occurred primarily and substantially in the Commonwealth of Massachusetts.

155.    As corporate officers, defendants Flores and Motto are personally liable under M.G.L. c. 93A, § 2 and 11 for the misconduct in which they personally engaged, as alleged herein.

156.  Flores and Motto personally engaged in misrepresentation, coercion, and conduct in derogation of known contractual obligations.

157.  The unfair and deceptive practices engaged in by each of the defendants was willful.

158.    The plaintiffs have been, and continue to be, damaged as a result of these defendants' unfair and deceptive acts and practices.

159.    As a result of the unfair and deceptive acts as described herein, the plaintiffs are entitled to be awarded their damages, double or treble damages, interest, costs and reasonable attorney's fees.

**WHEREFORE**, the Plaintiffs request that this Court enter judgment against all Defendants and  jointly and severally against Defendants, Sarno and Sygnator and City of Springfield, on all Counts of this Complaint and:

a. Award compensatory damages;

b. Award punitive damages;

c. Award interest and costs of this action;

d. Award attorneys' fees to the Plaintiffs; and

e. Award such other relief as this Court deems just and proper.

### THE PLAINTIFFS REQUEST A TRIAL BY JURY ON ALL COUNTS.

The PLAINTIFFS,
By their Attorney,

*/s/Michael T. Kogut*
Michael T. Kogut Esq.
BBO #276640
75 Market Place
Springfield, Massachusetts 01103
Tel No.:  (413) 348-2167
Fax No.: (413) 739-7168
mkogut@kogutlaw.com