UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PARAMOUNT REALTY INVESTMENT LLC, GRIDIRON PARKING, LLC, CREATIVE ENTERTAINMENT CONCEPTS, INC., D/B/A/ SKYPLEX, 1700 MAIN STREET, INC., STEVEN C. STEIN, <br><br> Plaintiffs, <br><br> v. <br><br> DOMENIC SARNO, PETER L. SYGNATOR, CITY OF SPRINGFIELD, HERIBERTO FLORES, JOHN MOTTO, NEW ENGLAND FARM WORKERS COUNCIL, INC., THE REPUBLICAN COMPANY, PETER A. PICKNELLY, PENN NATIONAL GAMING, INC., PAUL PICKNELLY, FRANCIS CATALDO, JOHN M. SANTANEILLO, ROBERT SLUKA, RICHARD KANE & ASSOCIATES, <br><br> Defendants. | C.A. No. 14-cv-30193-MAP |

MEMORANDUM AND ORDER REGARDING
DEFENDANTS' MOTIONS TO DISMISS
(Dkt. Nos. 12, 16, 35, 42, 49, 53, & 56)

May 20, 2015

PONSOR, U.S.D.J.

## I. <u>INTRODUCTION</u>

This is a dispute arising out of the allegedly forced sale of a downtown Springfield entertainment property. Plaintiff Steven Stein (individually and as successor to Paramount Realty Investments LLC and Gridiron Parking LLC, which have dissolved), Creative Entertainment Concepts, Inc. d/b/a Skyplex, and 1700 Main Street, Inc. (collectively "Plaintiffs"), allege violations of their constitutional rights under federal and state law, conspiracy, racketeering, and breach of contract against numerous defendants.  All Defendants have filed motions to dismiss (Dkt. Nos. 12, 16, 35, 42, 49, 53, & 56.)  For the reasons that follow, Defendants' motions will be allowed.

## II. <u>BACKGROUND</u>

Plaintiffs owned and operated the Paramount Theater, located at 1676-1708 Main Street in Springfield, Massachusetts, as well as the adjacent parking lot.  Branded as the Hippodrome, Plaintiffs offered live entertainment, DJ nights, and dance nights targeted at younger patrons. Plaintiffs allege that Defendants Heriberto Flores, John Motto, and New England Farm Workers Council, Inc., ("NEFWC

Defendants"), took advantage of Plaintiffs' dire financial situation, which was brought on, in whole or in part, by Springfield's unfair and discriminatory enforcement of various municipal regulations, to purchase the Paramount Theater and parking lot at an unfairly reduced price.

Plaintiffs entered into an agreement to sell the property to the NEFWC Defendants, with a closing date of March 4, 2011.[1] (NEFWC Mot. to Dismiss, Ex. 2, Dkt. No. 39.) The Purchase and Sale Agreement ("P&S") called for a purchase price of $2,214,800.00, but it cautioned that "[t]he Purchase Price shall be adjusted upwards or downwards based upon an appraisal of the Property." (Id. at 2.) The appraisal was performed by Defendants John Santaneillo and Robert Sluka of Kane & Associates ("Kane Defendants") and provided to the non-party lender, Chicopee Savings Bank. Plaintiffs argue that the Kane appraisal was flawed, failed to comply with professional standards, and undervalued the property. Additionally, Plaintiffs, in a conclusory manner,

---

[1] In weighing a motion to dismiss, the court may consider documents referenced in the complaint but not attached. See Cruz v. Melecio, 204 F.3d 14, 21 (1st Cir. 2000).

allege that other Defendants, including several members of
the Springfield business community, a local newspaper, and a
national gaming company, conspired to force this sale.  The
complaint appears to allege that the sale was advantageous
to Defendants because of its value in the event a casino
opened in Springfield.

Three years and seven months after selling the
property, Plaintiffs filed suit in this court bringing nine
counts against fourteen defendants.[2]  As noted above,
Defendants have filed seven motions to dismiss (Dkt. Nos.
12, 16, 35, 42, 49, 53, & 56), which Plaintiffs opposed.
The parties appeared before the court for oral argument on
May 6, 2015, and the court took the matter under advisement
at that time.

III.  <u>DISCUSSION</u>

When faced with a motion to dismiss, a court must
accept the allegations of the complaint as true, drawing all
reasonable inferences in favor of the plaintiff.  <u>Albright</u>

---

[2] Of the nine counts, five are misnumbered.  The
discussion below will therefore refer to the counts by their
underlying theories, as well as their numbers, to minimize
confusion.

4

v. Oliver, 510 U.S. 266, 268 (1994).  To survive a motion to dismiss, a complaint must contain "sufficient factual matter" to state a claim for relief that is actionable as a matter of law and "plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); Fed. R. Civ. P. 12(b)(6).  Dismissal is appropriate if a plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief."  Clark v. Boscher, 514 F.3d 107, 112 (1st Cir. 2008) (quoting Twombly, 550 U.S. at 557).

A.   Statute of Limitations

Five of Plaintiffs' counts are subject to dismissal as a matter of law because they do not survive the applicable statutes of limitations.  The § 1983 claims (Counts I & III) are subject to a three-year statute of limitations.  Street v. Vose, 936 F.2d 38, 39 (1st Cir. 1991).  Likewise, the count alleging violation of the Massachusetts Civil Rights Act (Count II) is governed by a three-year statute of limitations.  Mass. Gen. Laws ch. 260, § 5B.  Plaintiffs' civil conspiracy claim (Count VII) and tortious interference

with contractual relations claim (Count V) must also be brought within three years of their accrual date.  Pagliuca v. City of Boston, 35 Mass. App. Ct. 820, 823 (1994) (citing Mass. Gen. Laws ch. 260, § 2A).

    The limitations period for all of these claims began to run on the date Plaintiffs suffered their injury, not when Plaintiffs now claim that they first discovered the supposed illegality of Defendants' actions.  See id. at 822-23 (discussing accrual period for § 1983, MCRA, civil conspiracy, and interference with contractual relations claims).  In this case, the kick-off date for the three-year limitations period was March 4, 2011, the date of the allegedly forced sale of the Paramount Theater and adjacent parking lot.  As of that date, Plaintiffs had all the information they needed to make a thorough factual investigation and legal analysis of any claims they might wish to pursue.  Being on inquiry notice as of March 4, 2011, Plaintiffs' failure to commence litigation until October 30, 2014, well after March 4, 2014, is fatal to these five claims.  Accordingly, Counts I, II, III, V, and Count VII will be dismissed.

B.   <u>Civil RICO Claim</u>

Civil RICO claims require specific, fact-intensive allegations of predicate acts to survive Rule 12(b)(6) scrutiny.  To plead a civil RICO claim, a plaintiff must show (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  <u>Doyle v. Hasbro, Inc.</u>, 103 F.3d 186, 190 (1st Cir. 1990) (citations omitted).  A pattern of racketeering activity is established by showing at least two predicate acts defined in 18 U.S.C. § 1961(1), such as mail or wire fraud, while committing one or more of the prohibited activities set forth in § 1962(a)-(d).

The allegations of predicate acts supporting Plaintiffs' RICO claim (Count IV) are wholly conclusory. The only reference to predicate acts is set forth in paragraphs 131-32 of Plaintiffs' complaint (Dkt. No. 1), as follows:

> 131. During the course of the conspiracy and racketeering scheme the various defendants and non-party participants transmitted or caused to be transmitted information by means of wire and documents by mail as alleged herein for the sole purpose of continuing the racketeering scheme or artifice to defraud.

> 132. Such mailings and calls constitute mail fraud

7

and wire fraud pursuant to 18 U.S.C. § 1341 and 18
U.S.C. § 1343, respectively.

As the basis for a claim of a RICO violation, this sort
of general language is flatly inadequate.  See Ahmed v.
Rosenblatt, 118 F.3d 886, 889 (1st Cir. 1997) ("[A] pleader
must state the time, place and content of the alleged mail
and wire communications perpetrating that fraud.").  More
could be said about the deficiencies of the RICO claim --
the absence of any allegations supporting a pattern of
relatedness and continuity, for example -- but the glaring
absence of sufficient allegations of predicate acts makes
dismissal unavoidable.

C.   Breach of Good Faith and Chapter 93A

The NEFWC Defendants move to dismiss the counts
alleging a breach of the implied covenant of good faith and
fair dealing and a violation of Mass. Gen. Laws ch. 93A.  A
violation of the covenant of good faith generally requires
more than a breach of contract.  Targus Group Intern. Inc.
v. Sherman, 76 Mass. App. Ct. 421, 435 (2010).  Similarly,
"the mere breach of a contract, without more, does not
amount to a [chapter] 93A violation."  Madan v. Royal Indem.

Co., 26 Mass. App. Ct. 756, 762 (1989) (citations omitted).
Here, the allegations giving rise to the breach of good
faith claim and chapter 93A liability are premised upon the
same facts used to construct Plaintiffs' breach of contract
claim.  The failure to offer allegations that go beyond a
mere breach of contract is fatal to both the claims for
violation of the covenant of good faith and fair dealing and
for violation of chapter 93A.

Significantly, Plaintiffs' opposition to the motion to
dismiss offers no more than negligible argument in support
of either of these counts.  (Dkt. No. 60, at 6 & 17.)  The
First Circuit has recognized that the absence of focused
argument in connection with a motion may support an
unfavorable ruling.  See United States v. Zannino, 895 F.2d
1, 17 (1st Cir. 1990) ("It is not enough merely to mention a
possible argument in the most skeletal way, leaving the
court to do counsel's work, create the ossature for the
argument, and put flesh on its bones.").  Thus, based both
on the absence of any substantive argument in opposition and
the force of Defendants' arguments supporting dismissal, the
counts alleging a breach of the implied covenant of good

faith and fair dealing (Count V) and a violation of chapter
93A (Count VIII) will be dismissed.

D.   Breach of Contract

      The NEFWC Defendants have also moved to dismiss
Plaintiffs' breach of contract claim (Count IV), the only
count whose viability, as the court noted at oral argument,
is even colorable.  As a threshold matter, Plaintiff Steven
Stein does not have standing to bring this claim because he
has not asserted damages that distinguish him from the LLC
entities.  See Pagan v. Calderon, 448 F.3d 16, 28 (1st Cir.
2006) (holding that "actions to enforce corporate rights or
redress injuries to a corporation cannot be maintained by a
stockholder in his own name even though the injury to the
corporation may incidentally result in the depreciation or
destruction of the value of the stock").  Accordingly, only
Paramount Realty and Gridiron Parking have standing to bring
a breach of contract claim against NEFWC.  Similarly,
Defendants Flores and Motto executed the contract on behalf
of NEFWC.  These Defendants are not parties to the contract
in their individual capacities and cannot be sued for
breach.  That leaves Paramount and Gridiron's breach of

contract claim against NEFWC.

The core of Plaintiffs' breach of contract claim is
that NEFWC somehow improperly used the Kane appraisal, which
they say undervalued the property, in negotiating and
closing the sale and, in this manner, breached the terms of
the P&S agreement.  The fatal defect, however, is that even
assuming the appraisal, which Plaintiffs acknowledge was
obtained by a non-party (the bank), was somehow flawed, the
complaint does not offer allegations that demonstrate how
the use of that appraisal somehow breached any contract.
Notably, the complaint never identifies any specific
provision of the P&S agreement that NEFWC supposedly
breached.  Plaintiffs' opposition to Defendants' motion to
dismiss provides no further illumination.

The facts, to the extent they are developed, are
straightforward and may be gleaned from the complaint itself
or from documents the complaint refers to.  The P&S
specifically contemplated that the sale price could be
adjusted upwards or downwards based upon a forthcoming
appraisal.  (Dkt. No. 39, at 2.)  Prior to closing, NEFWC
presented Plaintiffs with a copy of the appraisal, pursuant

to Section 4.3.11 of the contract.  (Id. at 6.)  The sale,
which closed on May 4, 2011, reflected a downward valuation
of $389,800.00 from the original price.  Despite this
decrease in valuation, Stein and Michael J. Barrasso,
representatives of Gridiron Parking and Paramount Realty,
executed the contract and consummated the sale.  (Id. at 18-
19.)  Further, the contract contained default remedies
available to Plaintiffs in Section 7.2, allowing the sellers
to retain the $54,000.00 deposit if the purchaser failed to
perform.  (Id. at 9.)  Notwithstanding these protections,
Plaintiffs declined to make use of this recourse and instead
completed the sale.

Though Plaintiffs make broad, general allegations in
their complaint, nothing in that document identifies with
any specificity how NEFWC is alleged to have failed to
comply with the terms of the P&S agreement, or of any
contract.  Without this, Plaintiffs' breach of contract
claim (Count IV) must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions to
Dismiss (Dkt. Nos. 12, 16, 35, 42, 49, 53, & 56) are hereby

12

ALLOWED.   The clerk will enter judgment for Defendants.

This case may now be closed.

    It is So Ordered.


                                    /s/ Michael A. Ponsor
                                    MICHAEL A. PONSOR
                                    U. S. District Judge